**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                                          Case No. 3:07-cr-277-J-32JBT

LONNIE PITTMAN

## O R D E R

This case is before the Court on Defendant Lonnie Pittman's Motion to Reduce Sentence Pursuant to the First Step Act of 2018, (Doc. 101), and the Government's Response in Opposition, (Doc. 103). Pittman requests that the Court reduce his sentence from 195 months to 143 months or time served in accordance with the First Step Act. (Doc. 101 at 19). The Government opposes the request, claiming that Pittman is ineligible for a sentence reduction under the First Step Act based on the amount of cocaine base that Pittman agreed to in his plea agreement.

**I. BACKGROUND**

On October 17, 2007, Pittman was indicted on six federal charges: one count of conspiracy to distribute more than fifty grams of cocaine base, also known as crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Count One); one count of aiding and abetting distribution of crack cocaine in violation of §§ 841(a)(1) and 841(b)(1)(C) (Count Two); two counts of distributing

crack cocaine in violation of §§ 841(a)(1) and 841(b)(1)(C) (Counts Three and Four); one count of possessing a firearm in furtherance of drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count Five); and one count of being a felon in possession of a firearm in violation of §§ 922(g)(1) and 924(a)(2) (Count Six). (Doc. 1). Pittman reached a plea agreement with the Government, wherein he would plead guilty to Counts One and Five of the indictment and the Government would dismiss Counts Two through Four and Six. (Doc. 24 at 2–3). At that time, Count One carried a minimum mandatory sentence of ten years, and Count Five had a five-year minimum mandatory that was required to run consecutive to the underlying count of conviction. Additionally, the Government and Pittman agreed that his base offense level would be calculated at thirty-six, even though such agreement would not be binding on the Court. Id. at 3.

The Plea Agreement's factual basis describes Pittman's involvement in the conspiracy and drug trade. Id. at 16–19. It states that "Pittman obtained 1 ½ ounces up to 4 ounces of cocaine 3-4 times per week from his source of supply between May 2007 and August 2007, much of which was distributed as crack cocaine." Id. at 16. Additionally, an undercover officer who recorded buying drugs from Pittman determined, by comparison to known crack cocaine quantities, that on one occasion Pittman had more than 100 grams of crack cocaine. Id. at 17–18. When law enforcement attempted to arrest Pittman, he dropped a pistol and a bag of marijuana as he attempted to flee. Id. at 19. After

2

his arrest and being advised of his rights, "Pittman stated, in substance, that since 2005 he had purchased approximately two kilograms of crack cocaine from Grey and that he purchased approximately nine ounces of powder cocaine from Grey." Id. The factual basis also states: "The readily provable amount of cocaine and cocaine base in the conspiracy charged equates to offense level 36." Id.

Using the sentencing guidelines in effect at the time of Pittman's sentencing, the Presentence Investigation Report ("PSR") scored Pittman's base offense level at 36. (Doc. 99 at 15). It found Pittman responsible for 2 kilograms of crack cocaine, 254.7 grams of cocaine, and 36.9 grams of marijuana. Id. at 14–15. It then added two levels for Pittman's role in the offense, and subtracted three levels for acceptance of responsibility, giving Pittman a total offense level of 35. Id. His criminal history category was III. Id. at 19. Thus, as to Count One, Pittman had a 10-year minimum mandatory, and his Guidelines range was 210 to 262 months. Id. at 25. Count Five required a five-year term to run consecutive to any other count of conviction. Id. Pittman did not object to these calculations or the description of the offense conduct in the PSR (which was taken from the plea agreement). Id. at 28; Def.'s Sentencing Mem., Doc. 41 at 2.

At sentencing, the Court framed its choice as a range between 180 months on the low end (the total amount of the mandatory minimum terms required for Counts One and Five) and 270 months at the high end (the low end of the Guidelines range for Count One plus the 60 months required for Count Five),

3

which is what the Government had requested. Sentencing Tr., Doc. 58 at 4. The Court stated that "the drug quantity seemed perhaps high and criminal history actually seemed kind of low." Id. at 5. It further stated:

> I'm not so convinced that this drug quantity isn't a little inflated.
>
> . . . .
>
> . . . . And I think it's primarily because of the admissions that Mr. Pittman made.
>
> And, you know, it may be fair enough in terms of scoring. But when I look at that, I feel like that might be – that the scales might be tipped a little hard on drug quantity.

Id. at 8. The Court downwardly varied from the low end of Count One's guidelines, imposing a 200-month sentence: 140 months as to Count One and 60 months as to Count Five. Id. at 14; J., Doc. 45 at 2.

After the passage of the Fair Sentencing Act in 2010—which lowered the Guidelines for crack cocaine offenses—Pittman filed a motion for a sentence reduction under Amendment 750. (Docs. 49, 61). The Court denied the motion, (Doc. 72), and Pittman appealed, (Doc. 73). The Eleventh Circuit affirmed, holding that Amendment 750 relief was unavailable to Pittman because his downward variance sentence on Count One—140 months—was lower than the minimum of the amended guideline range for Count One—168 months. United States v. Pittman, 571 F. App'x 823, 824 (11th Cir. 2014). The Supreme Court

4

denied Pittman's writ of certiorari. Pittman v. United States, 135 S. Ct. 497 (2014) (mem.).

Pittman then filed a motion for a sentence reduction under Amendment 782, (Doc. 84), which lowered the Guidelines range for Count One to 135 months, (Docs. 86, 94). The Court granted Pittman's unopposed motion and reduced his sentence on Count One to 135 months, to run consecutive to the 60-month sentence on Count Five. (Doc. 95).

Pittman now seeks a further reduction of his sentence for Count One under the First Step Act. The Probation Office determined that Pittman was ineligible for relief, stating "[r]etroactive application of the Fair Sentencing Act of 2010 as to Count One would not reduce the statutory penalties from 10 years to Life imprisonment, as the record affirmatively establishes that the offense involved more than 280 grams of cocaine base." (Doc. 99). Pittman disagrees, arguing that the language of the First Step Act entitles him to relief, and that the extent of such relief is within the discretion of the Court. (Doc. 101). The Government agrees with the Probation Office that Pittman is not entitled to relief based on the drug quantity that he agreed to in his plea agreement. (Doc. 103).

## II. DISCUSSION

Final sentences—like Pittman's—may only be modified in limited circumstances. One such circumstance is when a court is "expressly permitted

5

by statute" to modify a sentence. 18 U.S.C. § 3582(c)(1)(B). Pittman asserts that the First Step Act is such a statute, but the Government contends that it does not apply to Pittman.

Before venturing into the First Step Act, the Court must ensure it has a basis to reduce Pittman's sentence. The relief Pittman seeks applies only to Count One. Pittman's sentence for that count is 135 months (after receiving Amendment 782 relief). (Doc. 95). But Pittman claims to have already served more than 143 months of his sentence. (Doc. 101 at 18). Thus, the order in which Pittman serves his sentences for Counts One and Five is important. To be eligible for relief, he must have served his sentence on Count Five—the violation of § 924(c)—before his sentence on Count One. Fortunately for Pittman, the Eleventh Circuit has clarified that "a mandatory consecutive sentence under § 924(c) must be served <u>before</u> any other sentence for the companion crime of violence or drug trafficking offense." United States v. Briscoe, 724 F. App'x 796, 799 (11th Cir. 2018) (emphasis added) (citing Jackson v. United States, 976 F.2d 679, 682 (11th Cir. 1992)). Thus, Pittman, having first served his sentence for Count Five, is currently serving his sentence on Count One, and this Court has authority to consider whether he is eligible for a reduction under the First Step Act.

The Court now turns to whether Pittman is eligible for a reduction under the First Step Act, and if so, to what extent a reduction is warranted.

6

## A. Eligibility for First Step Act Relief

Section 404 of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, made retroactive the reduction in statutory penalties for crack cocaine offenses implemented by the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Sta. 2372 (2010). Under the First Step Act, a court may "impose a reduced sentence as if [the Fair Sentencing Act was] in effect at the time the covered offense was committed." First Step Act of 2018, Pub. L. No. 115-391, § 404(b) (2018). The First Step Act defines a covered offense as: "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010." Id. § 404(a).

The Fair Sentencing Act increased the amount of crack cocaine needed to trigger the 10-year minimum mandatory in 21 U.S.C. § 841(b)(1)(A)(iii) from 50 grams to 280 grams. Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, § 2. The Government argues that because Pittman pleaded to a drug quantity that exceeds 280 grams of crack cocaine, his "statutory penalty remains unchanged;" thus, Count One is not a "covered offense." (Doc. 103 at 6). Pittman reads the First Step Act differently, asserting that Count One is a "covered offense" because the "statutory penalties" for his statute of conviction were modified by the Fair Sentencing Act. (Doc. 101 at 6).

7

This Court is not the first to address this issue, and two opposing interpretations have emerged. See United States v. Blocker, 378 F. Supp. 3d 1125, 1128–29 (2019) (explaining the two opposing interpretations). The two theories differ in how they interpret the definition of "covered offense." In the Government's view, the language "the statutory penalties for which were modified" refers to "a violation of a Federal criminal statute." And Congress's use of the term "violation," instead of conviction or indictment, requires courts to look at a defendant's particular conduct (i.e. how he violated the statute) to determine whether the statutory penalties for that conduct were modified. (Doc. 103 at 6–8). Further, the Government asserts that use of the phrase "committed before August 3, 2010" necessarily requires courts to look at the offense conduct to determine when a "violation" was "committed." Id. The Government cites a few courts that have adopted this reading. See, e.g., Blocker, 378 F. Supp. 3d at 1129; United States v. Ford, No. 3:97-cr-314-J-20JRK, slip op. at 1 (M.D. Fla. July 31, 2019) (ECF No. 480); see also Doc. 103 at 12 n.2 (citing six cases).

Pittman argues that the language "the statutory penalties for which were modified" refers to "a Federal criminal statute." And because the Fair Sentencing Act modified the statutory penalties for 21 U.S.C. § 841(b)(1)(A)—a federal criminal statute—Pittman asserts he is entitled to relief. Most district courts to consider this issue have adopted Pittman's interpretation of the statute. See, e.g., United States v. Jones, No. 3:99-CR-264-6 (VAB), 2019 WL

8

4933578, at *9 (D. Conn. Oct. 7, 2019) ("As a multitude of district courts across the country have now recognized, '[i]t is the statute of conviction, rather than a defendant's actual conduct, that determines a defendant's eligibility under the First Step Act.'" (citing United States v. Williams, No. 03-CR-1334 (JPO), 2019 WL 2865226, at *2 (S.D.N.Y. July 3, 2019))); United States v. White, No. 99-CR-628-04, 2019 WL 3228335, at *4 (S.D. Tex. July 17, 2019) ("Only a few courts have sided with the government's position that eligibility turns on the defendant's actual conduct, rather than the charged offense, making these courts 'outliers' on this issue."); see also Doc. 101-2 (compiling seventy cases that purportedly adopt the position Pittman espouses).

Now federal appellate courts are weighing in, agreeing with Pittman's interpretation. See, e.g., United States v. Jackson, 945 F.3d 315 (5th Cir. 2019) ("We thus conclude that whether a defendant has a 'covered offense' under section 404(a) depends only on the statute under which he was convicted."); United States v. McDonald, 944 F.3d 769, 772 (8th Cir. 2019) ("The First Step Act applies to offenses, not conduct, and it is McDonald's statute of conviction that determines his eligibility for relief." (citations omitted)); United States v. Beamus, 943 F.3d 789, 792 (6th Cir. 2019); United States v. Wirsing, 943 F.3d 175, 186 (4th Cir. 2019) ("All defendants who are serving sentences for violations of 21 U.S.C. § 841(b)(1)(A)(iii) and (B)(iii), and who are not excluded pursuant to the expressed limitations in Section 404(c) of the First Step Act, are

9

eligible to move for relief under that Act.").[1] The Court agrees with the majority of courts to address this issue: as Pittman was sentenced under a federal criminal statute for which the penalties were modified by the Fair Sentencing Act—§ 841(b)(1)(A) (Count One)—he is eligible for First Step Act relief.

### B. The Appropriate Statutory and Guideline Ranges

Even acknowledging Pittman's eligibility for First Step Act consideration, another issue remains. In his plea agreement, Pittman accepted responsibility for a drug quantity that requires a ten-year minimum mandatory sentence even under the Fair Sentencing Act. Does the First Step Act nevertheless allow a court to reduce a defendant's sentence below the minimum mandatory in this circumstance? The Court need not resolve this question here because the Court has determined, in its discretion, to reduce Pittman's sentence down to the minimum mandatory, i.e. from 135 months to 120 months as to Count One.

Thus, after evaluating the 18 U.S.C. § 3553(a) factors, the Court reduces Pittman's sentence to 120 months of imprisonment as to Count One, to run consecutive to his already served 60-month sentence on Count Five, for a total term of imprisonment of 180 months. In so doing, the Court commends Pittman in his rehabilitative efforts. Many of Pittman's family and friends wrote supportive letters, which the Court has also considered.

---

[1] The Eleventh Circuit has yet to directly decide the issue.

It is hereby

**ORDERED:**

1. Defendant Lonnie Pittman's Motion to Reduce Sentence Pursuant to the First Step Act of 2018, (Doc. 101), is **GRANTED in part**.

2. Defendant Lonnie Pittman's sentence is **REDUCED** to 120 months of imprisonment as to Count One, to run consecutive to his already served 60-month sentence on Count Five, for a total term of imprisonment of 180 months. All other terms and conditions of Pittman's judgment, (Doc. 45), remain in effect.

**DONE AND ORDERED** in Jacksonville, Florida this 22nd day of January, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

jb
Copies:

Counsel of record
U.S. Probation
U.S. Pretrial Services
U.S. Marshals Service
Bureau of Prisons
Defendant